### CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### CHANCERY DIVISION

| | | |
|---|---|---|
| BRIAN FRIEDOPFER, GAIL GUMBINER, JOE JANAS, SCOTT WOLF, and STONE LION MANAGEMENT, INC., Individually and On Behalf of All Investors and Shareholders of CENTRAL SLEEP DIAGNOSTICS, LLC, Plaintiffs, | ) ) ) ) ) ) ) ) ) ) | |
| v. | ) ) | CASE NO. 10 CH 37822 |
| KEN DACHMAN, and CENTRAL SLEEP DIAGNOSTICS, LLC, LYNN DACHMAN, JILLIAN DACHMAN, DAVID DACHMAN, GARY PARISI, GINA PARISI, and Certain John and Jane Does, Defendants. | ) ) ) ) ) ) ) ) | |

### FIRST AMENDED VERIFIED COMPLAINT

NOW COMES the Plaintiffs, Brian Friedopfer, Gail Gumbiner, Joe Janas, Scott Wolf, and Stone Lion Management Inc., individually and on behalf of all investors and shareholders of Central Sleep Diagnostics, LLC ("CSD"), by and through their attorneys, GARDINER KOCH WEISBERG AND WRONA, and for their complaint, they state as follows:

### I

### NATURE OF ACTION

1. Plaintiffs are investors and class A, B and C share unit holders of Central Sleep Diagnostics, LLC ("CSD") and bring this action individually and on behalf of CSD investors and shareholders against CSD; Ken Dachman, the manager of CSD; his family, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, and Gina Parisi; and



EXHIBIT
A

1

certain Jane and John Does for conversion, breach of contract, breach of fiduciary duty, accounting, securities fraud, fraudulent conveyance, conspiracy and RICO. Plaintiffs also seek the appointment of a receiver.

## II

## JURISDICTION AND VENUE

2. This court has personal jurisdiction over Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi, and CSD pursuant to §§ 2-209(b)(2) and 2-209(a)(2) of the Illinois Code of Civil Procedure (735 ILCS 5/2-209) because they are residents of the State of Illinois and because they committed tortuous actions within the state of Illinois.

3. This court has personal jurisdiction over Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi, and CSD pursuant to §§ 2-209(b)(4) and 2-209(a)(2) of the Illinois Code of Civil Procedure (735 ILCS 5/2-209) because their principal places of business are located within the State of Illinois and because they transacted business and committed tortuous acts within the State of Illinois.

4. Venue is proper in Cook County, Illinois pursuant to § 2-101(20 of the Illinois Code of Civil Procedure (735 ILCS 5/2-101) because a significant part of the events and transactions giving rise to the cause of action occurred in Cook County.

## III

## OVERVIEW OF CASE

5. Ken Dachman has devoted his personal and professional life to perfecting schemes to defraud the unsuspecting investor, often times with his wife Katherine Lynn Dachman and children Jillian Dachman, David Dachman, Gary Parisi, and Gina Parisi as active co-

conspirators. Dachman has spent twenty years soliciting monies from naive investors for certain alleged albeit phony business purposes, converting those monies to enrich and engorge himself and his family, and then filing bankruptcies and starting anew.

6. Dachman has variously posed as a "Real Estate" Consultant, "Consumer" consultant, "Diet-Expert", "Divorced Dads" advisor, "Pain Management" consultant, "Sleep Studies" consultant, and other fraudulent personas. He has filed five Chapter 13 bankruptcies and two Chapter 7 bankruptcies from 1984 through 2004. In three of the bankruptcies, the parties were both Kenneth Dachman and his wife Katherine L Dachman. Ken Dachman has been a defendant in over a dozen known cases and is currently the defendant in at least eighteen pending cases:

   a. Bankruptcy cases

     1. 04-26884 Filed: 07/20/2004 Terminated: 12/18/2004 by Kenneth A. Dachman Chapter 13

     2. 03-26248 Filed: 06/18/2003 Terminated: 06/30/2004 by Kenneth A. Dachman Chapter 13

     3. 01-01087 Filed: 01/11/2001 Terminated: 06/29/2001 by Kenneth A. Dachman Chapter 13

     4. 01-19518 Filed: 06/01/2001 Terminated: 09/28/2001 by Kenneth A. Dachman Chapter 7

     5. 95-03763 Filed: 02/23/1995 by Kenneth Dachman and Katherine Dachman Chapter 7

     6. 87-15796 Filed: 10/26/1987 by Kenneth Dachman and Katherine Dachman Chapter 13

     7. 84-07865 Filed: 06/21/1984 by Kenneth A Dachman and Katherine L Dachman Chapter 13

b.  Cases in which Ken Dachman is a named Defendant:

1.  91-CH-07410 North Lake Bank vs. Kenneth Dachman filed: 08/12/91

2.  99-CH-10688 People of the State of IL vs. Ken Dachman Filed: 07/27/99 (In this case, the People of the State of Illinois through the Cook County State's Attorney's Office filed a Compliant for injunctive relief against Ken Dachman d/b/a Alternative Home Financing for violations of the Illinois Consumer Fraud Act. The complaint alleged that Ken Dachman held himself out as a real estate consultant when in fact he was not a licensed real estate broker. Members of the public paid him fees for refinancing and then he failed to honor his contracts. On March 15, 2000, a final consent judgment was entered by Order against Ken Dachman permanently enjoining him for violating the Consumer Fraud Act. (See Exhibit 1 attached hereto.)

3.  00-CH-04693 People of the State of IL vs. Ken Dachman Filed: 03/27/00 (In this case, the Illinois Attorney General filed a complaint for injunctive relief against Ken Dachman d/b/a Home Financing Solutions. The complaint alleged that Dachman placed advertisements that he could obtain loans for consumers in return for a consulting fee. Dachman was charged with violations of the Credit Services Organizations Act and the Consumer Fraud Act. That case resulted in a default judgment being entered against Ken Dachman on June 6, 2000. (See Exhibit 2 attached hereto.)

4.  02-CH-17011 Labor Temps vs. Ken Dachman Filed: 09/17/02

5.  03-CH-06650 People of the State of IL vs. Ken Dachman Filed: 04/11/03

6.  06-CH-02497 Larry Kaufman vs. Ken Dachman Filed: 02/06/06 (In this case, Kaufman filed suit against Ken Dachman and Key Partners for fraud and breach of fiduciary duties alleging that Dachman, among other things, used Kaufman's credit card for improper purposes, including travel, vacations and a car; this is nearly an identical scam as the one alleged herein).

7.  Ken Dachman is a serial financial predator, who has devoted decades of his personal life and professional career to defrauding naïve investors by creating companies, obtaining investments, converting the investments to his and his families' personal use, filing bankruptcies, and then starting anew. This complaint alleges fraud, RICO, conversion,

fraudulent conveyance, civil conspiracy and securities fraud against Ken Dachman, his wife Lynn Dachman, and other members of his family.

8.  CSD is a limited liability company with numerous classes of stock. Among its classes of stock are classes A, B and C. Plaintiffs each invested in CSD by purchasing class A, B and/or C shares of stock.

9.  Defendants Ken Dachman and Lynn Dachman and certain Jane and John Does were each involved in some capacity in the management and operation of CSD.

10. Ken and Lynn Dachman converted assets belonging to CSD and its investors for their personal use and the use and enjoyment of their children, Jillian Dachman, Gina Dachman, David Dachman, as well as Gary Parisi.

11. Further, Defendants breached contracts entered into with CSD and breached fiduciary duties owed to CSD and its investors, patients and physicians when they : (1) diverted corporate assets for their personal uses including a house in Lake Forest, family trips to Europe and Alaska, the purchase of a $60,000 Range Rover, rare books and diverted monies to family members for a tattoo parlor and rents on houses, and falsified CSD's financial statements; (2) paid themselves salaries based upon fictitious receivables and for work not performed; (3) concealed true and accurate books, records and conflicts of interest from investors, and (4) mislead and deceived Medicare and insurance companies with false billings;

## IV

## PARTIES

### Plaintiffs

12. Brian Friedopfer ("Friedopfer") is an individual residing at 7356 Palma Lane, Morton Grove, IL. At all relevant times Mr. Friedopfer was Vice President of CSD and a class B shareholder.

13. Gail Gumbiner is an individual residing at 244 Hibbard Rd, Wilmette, IL and is a class B shareholder.

14. Joe Janas ("Janas") is an individual residing at 180 Iroquois Drive, Islamorada, FL 33036 and is a class B shareholder.

15. Scott Wolf ("Wolf") is a resident of Chicago, Illinois and is a class A shareholder of CSD with 1,146,193 class A voting shares.

16. Stone Lion Management Inc. is located at 3316 North Damen Ave. Chicago, Illinois. Stone Lion Management Inc. Inc. is a consultant/contractor that solicits financial investments from individuals. Scott Wolf and Stone Lion Management entered into a referral agreement with Ken Dachman in which he received class A shares of CSD in return for soliciting investors.

## V

### Defendants

17. Ken Dachman is an individual residing at 1100 W Keswick Lane, Lake Forest, IL 60045. Ken Dachman purports to be the Manager and/or CEO of CSD. He holds 2,292,306 class A voting shares.

18. Central Sleep Diagnostics, LLC ("CSD") is an Illinois limited liability company doing business at 60 Revere Drive Suite 400 Northbrook, IL 60602.

19. Lynn Dachman is an individual residing with Ken Dachman at 1100 W. Keswick Lane, Lake Forest, IL 60045.

20. Lynn Dachman is Ken Dachman's wife and purports to act as the book and record keeper for CSD. Lynn Dachman has been paid approximately $6,500 per month of investor monies from by her husband Ken Dachman to perform little or no work for CSD.

21. Lynn Dachman has personal knowledge that she and Ken Dachman have filed both Chapter 7 and Chapter 13 bankruptcies in 1984, 1987, and 1995. She is an active participant in numerous schemes to fraud innocent investors to enrich and engorge herself and her family.

22. David Dachman is an individual residing at 2614 N. Clyburn, Apt. 214, Chicago, IL 60614 and has received monies and gifts from Ken Dachman from CSD investor monies. David Dachman is aware of Kenneth and Lynn Katherine Dachman's bankruptcies, civil fraud suits, and has knowingly received monies from innocent investors.

23. Gary Parisi is an individual residing at 640 Windsor Rd, Glenview, IL 60025. Gary Parisi is the owner of Windy City Ink, a tattoo parlor financed by CSD investors, which is located at 166 W Division St Chicago, IL 60610.

24. Mr. Parisi told Brian Friedopfer that Windy City Ink was financed by Ken Dachman with monies from CSD.

25. Mr. Parisi is also a member of Key Partners, along with Ken Dachman and Timothy Murphy. Gary Parisi is aware of Kenneth and Katherine Lynn Dachman's bankruptcies,

civil fraud suits, and has knowingly received monies from innocent investors to unjustly enrich himself.

26. Jillian Dachman is Ken Dachman's daughter has received monies and gifts from Ken Dachman from CSD investor monies. Jillian Dachman is aware of Kenneth and Katherine Lynn Dachman's bankruptcies, civil fraud suits, and has knowingly received monies from innocent investors to unjustly enrich herself.

27. Certain Jane and John Does have acted in concert with and aided and abetted Ken Dachman to divert investor assets, create false and misleading books and records and otherwise assist Ken Dachman in the commission of the acts detailed in this complaint.

## VI

## RELEVANT BACKGROUND FACTS

28. CSD was formed in June 2008 with an initial capitalization of approximately two million dollars ($2,000,000) from approximately seventy investors. CSD purports to offer diagnostic services for individuals suffering from sleep disorders: i.e. sleep apnea, narcolepsy, insomnia. CSD purports to conduct sleep studies through ambulatory home testing procedures.

29. Jason Metzler was one of the first persons hired by Ken Dachman in June 2008 at CSD as the outreach coordinator/ marketing director.

30. At the time Metzler was employed at CSD, there was no diagnostic or other therapeutic equipment to test patients. Nonetheless, Dachman represented in marketing materials to the public that such equipment existed.

31. Ken Dachman instructed Metzler and others to recruit physicians by stating they were approved by Medicare, and thus there were no billing concerns related to the procedures.

32. Metzler advised Dachman that the marketing material and statements regarding equipment and Medicare billing were false.

33. Dachman told Metzler and others that he, Dachman, would "just bill it fraudulently as though the study took place inside the main facility instead or at the patient's home."

34. Metzler discovered during the testing and decision process that the equipment Dachman had purchased and used was unreliable.

35. Metzler discovered during the testing and decision process that a number of patients had not received accurate results, but Dachman nonetheless billed those studies to insurance and/or Medicare.

36. Metzler advised Dachman that the marketing material was fraudulent and the testing process was misleading, unreliable and unsafe.

37. Dachman told Metzler that since he suffered from sleep apnea he was an expert and Metzler's employment was terminated.

38. The original registered agent for CSD was Timothy M. Murphy who is an attorney. The address for the registered agent was 762 W Dempster, Mount Prospect, Il 60056, which is also the address for the Timothy Murphy law office.

39. Mr. Murphy is also a "member" of Key Partners, a web entity created by Ken Dachman to deceive and defraud investors.

40. Ken Dachman is the Manager/Chairman of CSD and serves as the Principal Executive Officer. Mr. Dachman is also a "member" of Key Partners with Mr. Timothy Murphy and his son-in-law Gary Parisi.

41. Scott Wolf was the Director of Investor Relations of CSD and has 1,146,193 Class A voting shares of CSD.

42. Scott Wolf, through Stone Lion Management Inc., entered into a referral agreement with Ken Dachman and CSD through which he has solicited individuals to invest in CSD in return for shares of CSD. See Exhibit 3 attached hereto affidavit of Scott Wolf.

43. Scott Wolf, through Stone Lion Management Inc., solicited approximately seventy investors with assets of approximately $2,000,000. See Exhibit 4 attached hereto.

44. CDS purports to conduct remote lab quality "type 1" home testing of sleep disorders.

45. A diagnostic sleep study conducted at home is referred to as type A 2 & 3 study and may be billed to insurance and Medicare.

46. Sleep studies conducted in hospitals are referred to as an "attended" type 1 study and the procedure may be billed as such to insurance and Medicare.

47. Potential CSD investors were provided with an executive summary which variously described the background, procedures, management, capital projections and use of funds. See exhibit 5 attached hereto.

48. The CSD executive summary advised potential investors that:

    a. It was fully funded and provided type 1 lab studies;

    b. Since May 2009, CSD had experienced a 100% increase in referrals;

    c. CSD has $200,000 in receivables without Medicare and $1 million with Medicare;

    d. CSD has a competitive advantage, which includes Ken Dachman's knowledge and experience.

49. The executive summary was false and misleading and distributed to investors and physicians with the intent that they rely thereon. The executive summary deliberately

omitted Ken Dachman's prior bankruptcies and lawsuits for violations of the Illinois Consumer Fraud Act, breaches of fiduciary duties, and other matters.

50. The CSD executive summary included a profit and loss summary, which stated the income captured, the total operating expense, and the operating income for years 2 and 3. The profit and loss summary was prepared by the accounting firm of Kipnis, Rosen and Bloom ("KRB").

51. The CSD executive summary includes, at paragraph 10 (Use of Funds), an explanation of the purchase of equipment, working capital and debt retirement and was intended to be relied upon by potential and actual investors and physicians.

52. The CSD executive summary states in paragraph 6 that CSD has retained "Key Partners" "to spear head the marketing effort". The CSD executive summary at paragraph 6 fails to state that Key Partners is a web entity whose principals include Ken Dachman, his personal attorney Timothy Murphy, and his son-in-law Gary Parisi.

53. Gary Parisi is Ken Dachman's son-in-law and owns Windy City Ink, a tattoo parlor located at 166 W Division Chicago, IL.

54. Windy City Ink is a tattoo parlor financed by and with proceeds from CSD investors.

## VII

## THE OPERATING AGREEMENT FOR CSD

55. CSD is a Limited Liability Company doing business pursuant to an amended and restated Limited Liability Company operating agreement dated May 12, 2010. See Exhibit 6 attached hereto.

56. CSD's current registered agent is Michael S. Pomerantz, who is located at 1312 N. Halsted St., Suite 100, Chicago, IL 60601.

57. Pursuant to section 5.2, Kenneth A. Dachman is the manager of the company.

58. Pursuant to section 5.3(a) (Certain Powers of the Manager), the Manager has certain powers and authority including executing agreements, instruments and documents "necessary to and in the ordinary course of the business of the company".

59. Dachman's purchase of rare books, a $200,000 down payment on a house, an investment in a tattoo parlor for his son-in-law, family vacations to Europe and Alaska, all with investors' monies was "not necessary to and in the ordinary course of the business for the company".

60. Pursuant to section 5.3(b), the Manager is authorized "to make any and all expenditures necessary or appropriate in connection with the management of the affairs of the company".

61. Dachman's purchase of rare books, a $200,000 down payment on a house, an investment in a tattoo parlor for his son-in-law, family vacations to Europe and Alaska, all with investors' monies was "not necessary or appropriate in connection with the management of the affairs of the company".

62. Pursuant to section 5.3 (h), the Manager is authorized "to do and perform all other acts as may be necessary or appropriate for the conduct of the company's business".

63. Dachman's purchase of rare books, a $200,000 down payment on a house, an investment in a tattoo parlor for his son-in-law, family vacations to Europe and Alaska, all with investors monies was " not necessary to or appropriate for the conduct of the company's business".

64. Pursuant to section 5.4 (Liability for Certain Acts), "The Manager shall perform its duties as a Manager in good faith, in a manner it reasonably believes to be in, or not opposed to,

the best interest of the company, and with such care as an ordinary person in a like position would use under similar circumstances."

65. Dachman's purchase of rare books, a $200,000 down payment on a house, an investment in a tattoo parlor for his son-in-law, family vacations to Europe and Alaska, all with investors monies was " in good faith and was not performed as an ordinary person in a like position would do for the company".

66. Pursuant to section 5.8 (Removal), "If a Manager is materially in default of its obligations here under, the Manager may be removed by the affirmative vote of a Class A majority interest."

67. The manager is materially in default and the Class A majority shareholder Scott Wolf has demanded that Ken Dachman be removed.

68. CSD has Class A, Class B and Class C investors, who own shares or units in amounts reflected in the CSD Articles of Organization, which is attached hereto as Exhibit 7.

**BRIAN FRIEDOPFER**

69. On or about December 2008, Mr. Dachman offered Mr. Friedopfer, then an employee of Mr. Dachman at Key Partners, a senior position with Central Sleep Diagnostics, LLC ("CSD"). Mr. Friedopfer's title was to be Vice President.

70. At all relevant times, Brian Friedopfer was the Vice President of CSD and a class B shareholder. Mr. Friedopfer had access to the books and records of CSD, including the CSD credit cards.

71. On or around December 2008, Mr. Friedopfer was told by Mr. Dachman that CSD would conduct in home sleep studies that were billed to Medicare or an insurance company. Typically, Medicare or an insurance company was billed $2,500 per sleep study.

72. Mr. Friedopfer has first hand knowledge that CSD was financed through investors, who purchased units in CSD, and that monies were diverted and dissipated from CSD by Ken Dachman for the latter's personal and family uses, such as, rare books, cars, housing payments, and European and Alaskan cruises. See Exhibit 8 attached hereto, Affidavit of Brian Friedopfer.

73. At all relevant times, Mr. Friedopfer had access to the books, records and documents of CSD. Ken Dachman told Mr. Friedopfer that he could not obtain credit and asked him if his mother, Gail Gumbiner, would open an American Express credit card in her name for CSD.

74. In 2009, Gail Gumbiner opened a CSD credit card with American Express to be used by Ken Dachman and Mr. Friedopfer solely for corporate purposes. All bills incurred by Ken Dachman and Mr. Friedopfer were paid for by CSD checks.

75. Neither Mr. Friedopfer nor Ms. Gumbiner were aware that Ken Dachman had employed this scam previously upon Larry Kauffman (see exhibit 9 attached hereto), or that Ken Dachman had been enjoined by the People of the State of Illinois.

76. Mr. Friedopfer knows that investors' monies held in CSD bank accounts were used by Ken Dachman for personal matters and not for legitimate or reasonable expenses for CSD. Attached hereto as Exhibit 8A is a true and accurate copy of the Kenneth Dachman American Express card for the period December 5, 2009 to February 5, 2010, which was to be used solely for CSD's business expenses. All expenses incurred on this card were paid for with CSD investors' monies. Friedopfer knows that the following expenses billed by Ken Dachman on the credit card were for personal and not corporate matters:

14

    a. See exhibit 8A attached hereto Page 2: $2,500 for advertising. The advertising so billed to CSD was in fact an advertisement for Windy City Ink, which is owned by Ken Dachman's son-in-law Gary Parisi. When Mr. Friedopfer confronted Ken Dachman over the improper and unauthorized use of CSD funds, Ken Dachman stated "it's my company and none of your business".

    b. Page 4: $1,458 to Santi Floral Design. Ken Dachman told Mr. Friedopfer that this purchase was flowers for Jewish High Holiday.

    c. Page 12: $3,548.12 for the purchase of 2 plasma TVs for Ken Dachman's house.

    d. Page 13: $1,061 for the purchase of remote control cameras for Ken Dachman's house in Lake Forest.

    e. Page 19: $255.06 for toys purchased at Toys 'R' Us.

    f. Page 20: $478.13 for jewelry at Tiffany's purchased for his daughter.

77. Mr. Friedopfer also has personal knowledge that the following purchases and/or expenditures were made by Ken Dachman with investor monies:

    a. Approximately $200,000 was used for a down payment on a mansion located at 1100 Keswick Drive, Lake Forest, IL

    b. Approximately $30,000 was spent by Ken Dachman with CSD investor's monies for a family trip to Europe. See Exhibit 8B attached hereto which is a true and accurate photograph that was posted by Ken Dachman on Facebook of his family trip. Said photograph depicts Ken Dachman, his

son David Dachman, his daughters Gina Parisi and Jillian Dachman, and his mother-in-law in Europe;

c. Approximately $30,000 was spent for a Dachman family cruise to Alaska, see Exhibits 8C and 8D attached hereto, which are photographs posted by Ken Dachman on Facebook of his family on the Alaskan cruise;

d. Approximately $400,000 was invested in Windy City Inc. a tattoo parlor located at 166 W Division St. Chicago, IL 60610. The owner of Windy City Inc. is Gary Parisi, who is Mr. Dachman's son-in-law. Mr. Parisi is also a member/ owner of Key Partners.

e. Page 8 of the January 6, 2010 to February 5, 2010 Amex statement reflects the purchase of $6,711.25 for a rare book from Bauman Rare Books at 535 Madison Ave. in New York. This rare book was purchased on January 21, 2010 by Ken Dachman and paid for with CSD investor monies.

f. Mr. Friedopfer was present when Mr. Dachman paid $60,000 to buy a Range Rover with monies from CSD. Mr. Dachman asked Mr. Friedopfer if he would put the car in his name to hide its ownership and he refused.

g. Mr. Friedopfer knows that checks were written from CSD to Mr. Dachman's wife Lynn in the amount of $6,500 per month who performed little or no work.

78. Mr. Dachman told Mr. Friedopfer that he was spending thousands of dollars every month to pay rent on his children's homes in Glenview and the source of that money was investor money at CSD.

79. Mr. Dachman told Mr. Friedopfer that his rare antique books were worth over $500,000.

80. Mr. Friedopfer learned that billings for reimbursements to Medicare and insurance companies were being improperly submitted in that CSD did not conduct type 1 tests, but rather type 2 tests.

## GAIL GUMBINER

81. Ms. Gail Gumbiner was approached by Brian Friedopfer, who advised her that he was the Vice President of Central Sleep Diagnostics and asked her if she would obtain corporate credit cards for Brian Friedopfer and Ken Dachman for CSD.

82. Ms. Gumbiner was advised that Mr. Dachman was having difficulty obtaining a credit card for CSD because of a complaint that had been filed against him years ago.

83. Ms. Gumbiner was advised by both Brian Friedopfer and Ken Dachman that two credit cards in their names were to be and would be used solely for corporate purposes to make purchases in the ordinary course of business for CSD and the credit cards would be paid for by CSD.

84. Ms. Gumbiner opened two American Express credit cards under her name as guarantor for Ken Dachman and Brian Friedopfer. Ms. Gumbiner recently determined that Mr. Dachman has been using the credit cards for personal purposes and not for corporate purposes related to CSD. See exhibit 10 attached hereto, Affidavit of Gail Gumbiner, also exhibit 8 affidavit of Brian Friedopfer.

85. Ms. Gumbiner also was asked to invest in CSD. Prior to investing in CSD Ms. Gumbiner reviewed an Operating Agreement, financial statements and an executive summary.

86. Upon information and belief the operating Agreement and executive summary indicates that they were prepared, in part, by Timothy Murphy. Ms. Gumbiner was not advised

that Timothy Murphy was Ken Dachman's partner at Key Partners or that Timothy Murphy had represented Ken Dachman in Kauffman v Dachman and Key Partners.

87. Ms. Gumbiner in reliance upon the operating agreement, executive summary and financial statements invested $ 75,000 and in return received documents indicating that she owned 75,000 Class B of shares and/or units of CSD.

88. Ms. Gumbiner also reviewed and relied upon certain financial statements prepared by Kipnis, Rosen and Bloom which purported to be the financial statements of CSD.

89. Ms. Gumbiner would not have invested in CSD but for the financial statements prepared by Kipnis, Rosen and Bloom.

90. Ms. Gumbiner would not have invested in CSD but for the executive summary prepared by Ken Dachman and others.

## VIII

## KEY PARTNERS

91. Key Partners is a web site entity created by Ken Dachman and certain Jane and John Does that purports to offer competitive analysis, corporate introductions, and marketing & media campaigns.

92. Key Partners' web site states that,

> "Key Partners has its roots in charitable fundraising. Our original partners raised a lot of money for non-profit organizations by creating partnerships with generous high-level executives at some of the world's largest corporations. We began working with commercial enterprises in 1981 to help them build profitable relationships within our expanding network. We've built a solid reputation over the years by bringing value to our clients and the people we introduce them to. Today, Key Partners is one of the premier consulting firms of its kind."

93. Key Partners did not have a corporate existence in 1981.

94. Key Partners is an enterprise or entity used by Ken Dachman, Tim Murphy, Gary Paris and others to solicit and receive monies from potential investors which are then diverted by Ken Dachman and his wife and children for personal use such as houses, cars, vacations, cruises etc. See exhibit 9 attached hereto, Complaint of Larry Kauffman v Ken Dachman and Key Partners.

95. At all relevant times, Timothy M. Murphy holds himself out to the public as a Partner or member of Key Partners and an attorney with an MBA. (Mr. Murphy states on his website "As those of you know me know, I'm usually a bit of a bastard").

96. Mr. Murphy is also the VP Business Development & Corporate Counsel in Key Partners.

97. Mr. Murphy's offices are located at 762. W. Dempster D-211, Mount Prospect IL, 60056.

98. Mr. Murphy was the original registered agent of CSD and upon information and belief assisted in drafting the Operating Agreement and the executive summary.

99. Mr. Murphy represents to the public that his practice focuses on felony trials and appeals, contract and tort disputes, child custody and family law, business planning, complex litigation and collections. Mr. Murphy has also aided as the defense attorney for Ken Dachman and Key Partners.

100. The executive summary for CSD states that CSD may retain the services of Key Partners but fails to disclose that Mr. Murphy, as attorney for CSD and Ken Dachman, also personally profits from Key Partners. See exhibit 3A attached hereto.

101. Neither the CSD operating agreement or the executive summary nor the Key Partners web site disclosed (1) the prior bankruptcies filed by Ken Dachman and his wife and (2) the law suits against Ken Dachman for fraud.

102. Neither the CSD operating agreement nor the CSD executive summary stated that Mr. Murphy has a private financial partnership with Ken Dachman in Key Partners.

103. Gary "Picasso" Parisi is the director of "creative services" at Key Partners and the son-in-law of Ken Dachman. See exhibit 3A attached hereto.

104. Mr. Parisi is the owner of Windy City Ink a tattoo parlor located at 166 W Division St Chicago, IL 60610.

### IX

### KIPNIS, ROSEN AND BLOOM

105. Kipnis, Rosen and Bloom, Ltd ("KRB") are certified public accountants. KRB is located at 5550 West Touhy Ave. Suite 300 Skokie, Illinois 60077.

106. KRB purports to provide a full range of accounting services including audit and attestation services, compilation and review services, controllership functions, and accounting system implementation services.

107. KRB'S tax department purports to offer return preparation and planning for corporate, partnership, individual, fiduciary, non-profit and employee plans.

108. KRB's consulting group provides services in valuation, litigation support, mergers and acquisitions, human resource planning, technology, property management and financial planning.

109. KRB prepared financial statements for CSD which were used by CSD to solicit and retain investors for shares or class units in CSD. See exhibit 3B attached hereto.

110. The financial documents prepared by KRB were materially false, did not comply with generally accepted accounting procedures ("GAAP"), and were intended to be relied upon by individuals such as Gail Gumbiner, Joe Janas and others.

<u>X</u>

<strong><u>ALLEGATIONS OF FRAUD</u></strong>

<strong><u>A. Ken Dachman's history of serial Predatory Fraud</u></strong>

111.    Ken Dachman has been a defendant in  the following law suits and variously charged with fraud, breach of fiduciary duties and breach of contract:

a.  Bankruptcy Cases:

1.  04-26884 Filed: 07/20/2004 Terminated: 12/18/2004 by Kenneth A. Dachman Chapter 13

2.  03-26248 Filed: 06/18/2003 Terminated: 06/30/2004 by Kenneth A. Dachman Chapter 13

3.  01-01087 Filed: 01/11/2001 Terminated: 06/29/2001 by Kenneth A. Dachman Chapter 13

4.  01-19518 Filed: 06/01/2001 Terminated: 09/28/2001 by Kenneth A. Dachman Chapter 7

5.  95-03763 Filed: 02/23/1995 by Kenneth Dachman and Katherine Dachman Chapter 7

6.  87-15796 Filed: 10/26/1987 by Kenneth Dachman and Katherine Dachman Chapter 13

7.  84-07865 Filed: 06/21/1984 by Kenneth A Dachman and Katherine L Dachman Chapter 13

b.  Cases in which Ken Dachman is a named Defendant:

1.  91-CH-07410 North Lake Bank vs. Kenneth Dachman filed: 08/12/91

2.  99-CH-10688 People of the State of IL vs. Ken Dachman Filed: 07/27/99 (In this case, the People of the State of Illinois through the Cook County State's Attorney's Office filed a Compliant for injunctive relief against Ken Dachman d/b/a Alternative Home Financing for violations of the Illinois Consumer Fraud Act. The complaint alleged that Ken Dachman held himself out as a real estate consultant when in fact he was not a licensed real estate broker. Members of the public paid him fees for refinancing and then he failed to honor his contracts. On

21

March 15, 2000, a final consent judgment was entered by Order against Ken Dachman permanently enjoining him for violating the Consumer Fraud Act. (See Exhibit 1 attached hereto.)

3. 00-CH-04693 People of the State of IL vs. Ken Dachman Filed: 03/27/00 (In this case, the Illinois Attorney General filed a complaint for injunctive relief against Ken Dachman d/b/a Home Financing Solutions. The complaint alleged that Dachman placed advertisements that he could obtain loans for consumers in return for a consulting fee. Dachman was charged with violations of the Credit Services Organizations Act and the Consumer Fraud Act. That case resulted in a default judgment being entered against Ken Dachman on June 6, 2000. (See Exhibit 2 attached hereto.)

4. 02-CH-17011 Labor Temps vs. Ken Dachman Filed: 09/17/02

5. 03-CH-06650 People of the State of IL vs. Ken Dachman Filed: 04/11/03

6. 06-CH-02497 Larry Kaufman vs. Ken Dachman Filed: 02/06/06 (In this case, Kaufman filed suit against Ken Dachman and Key Partners for fraud and breach of fiduciary duties alleging that Dachman, among other things, used Kaufman's credit card for improper purposes, including travel, vacations and a car; this is nearly an identical scam as the one alleged herein).

112.    Ken Dachman currently is the defendant in at least twelve lawsuits. See Exhibit 11 attached hereto.

113.    None of the lawsuits listed in Paragraphs 111 above were disclosed to potential or actual shareholder members in CSD.

### B. Ken Dachman's use of CSD Investor funds for his personal benefit

114.    Ken Dachman, in furtherance of his history of fraud, in violation of the Operating Agreement and as part of an ongoing fraud and racketeering scheme, has used and/or converted CSD investors' monies for the purchase of the following personal expenses:

a. Approximately $400,000 of investors' monies was gifted and/or loaned to Gary Parisi, Ken Dachman's son- in- law, for a tattoo parlor, Windy City Ink;

22

    b.  A $200,000 down payment on a mansion located at 1100 Keswick Drive in Lake Forest, IL;

    c.  Two plasma televisions purchased in the amount of $3,410;

    d.  A range rover purchased for $60,000;

    e.  A first edition antique books in value in excess of $ 7500.00;

    f.  Thirty-thousand dollars ($30,000) for a family trip to Europe;

    g.  Thirty-thousand ($30, 000) for a family cruise to Alaska;

    h.  Paying mortgages and/or rents for each of his children;

115.  The purchases listed in paragraph 90 were not reasonable, necessary, or appropriate to the operations of CSD, and violate the Operating Agreement.

## C.  Medicare and Insurance Fraud

116.  Upon information and belief, Ken Dachman and CSD have been billing Medicare and insurance companies for type 1 services when in fact they were performing type 2 services. See Exhibit 8 Affidavit of Brian Friedopfer.

## D. Ken Dachman's Illegal,arbitrary and capricious sale of securities

117.  Two of the investors in CSD are Joseph and Joanne Janas of Islamorada, Florida.

118.  In 2009 the Janas' invested approximately $171,500 in CSD in both equity and loans after reviewing the Operating Agreement, executive summary and financial statements. (See Janas affidavit attached hereto as exhibit 12).

119.  In or around June 2010, the Janas went to the offices of CSD at 60 Revere Drive in Northbrook to meet with Ken Dachman to discuss why their loans had not been timely repaid pursuant to written agreement. See exhibit 12A (written agreement).

120. In that meeting at CSD with Ken Dachman, Joseph Janas, and Joanne Janas, Dachman stated that CSD was experiencing a cash shortage and he was seeking contributions from his relatives to meet payroll.

121. Joanne Janas asked Ken Dachman to see CSD's financial records and cash disbursement journals. Ken Dachman stated that his wife, Lynn Dachman, maintained those books and records and that he refused to produce them to the Janas' in violation of the operating agreement. See exhibit 12 attached hereto, Affidavit of Joe Janas.

### E. CONVERTIBLE DEBT FRAUD

122. CSD by and through Ken Dachman entered into Convertible Debt Agreements with investors with fraudulent and arbitrary notes of interest.

123. On or about October 27, 2009, CSD entered into a Convertible Debt Agreement with Anna K Wilbur and Toby C Wilbur for the amount of $30,000 as a 3 year loan agreement with a rate of interest at 24%. See exhibit 13 attached hereto.

124. On or about January 11, 2010, CSD entered into a Convertible Debt Agreement with Leatha Archer for the amount of $21,000 as a 3 year agreement with a rate of interest of 26% per year. See exhibit 14 attached hereto.

125. On or about November 3, 2009, CSD entered into a Convertible Debt Agreement with Betty Johnson for the amount of $17,000 as a 3 year agreement with a rate of interest of 24% per year. The loan carries an option to convert the principal amount into "C-Class" units of CSD at a price of $5 for the term of one year. See exhibit 15 attached hereto.

126. On or about March 21, 2010, CSD entered into a Convertible Debt Agreement with Jack Titlow for the amount of $25,000 as a 3 year agreement with a rate of interest of 15% per year. See exhibit 16 attached hereto.

127. On or about April 8, 2010, CSD entered into a Convertible Debt Agreement with Richard Alcock for the amount of $25,000 as a 6 month agreement with a rate of interest of 10% per year. The loan carries an option to convert the principal amount into "C-Class" units of CSD at a price of $3 for the term of six months. See exhibit 17 attached hereto.

128. On or about April 6, 2010, CSD entered into a Convertible Debt Agreement with Clifford and Kimberley Adams for the amount of $95,000 as a 3 year agreement with a rate of interest of 5% per year. The loan carries an option to convert the principal amount into "C-Class" units of CSD at a price of $4 for the term of six months. See exhibit 18 attached hereto.

129. The acts described in Paragraphs 98-104 violate the operating agreement and Illinois and Federal Securities Laws.

**F. Ken Dachman's illegal arbitrary and capricious sale of units in Advanced Sleep Diagnostic ("ASD").**

130. The amended Operating Agreement provides for the sale of class A, B and C units.

131. Ken Dachman created a separate entity Advanced Sleep Diagnostics ("ASD"), an unlicensed, unregulated, fictitious entity to solicit and receive monies from investors to fund CSD. Dachman solicited and received Investors' monies to purchase Class B units in CSD in an illegal, arbitrary and capricious manner as follows:

    a.  On or about July 15, 2010, Sean Selleck was assigned 5,000 class B units in consideration of $5,000.

    b.  On or about June 22, 2010, Kevin Wick was assigned 40,000 class B units for $1.

    c.  On or about February 4, 2010, Dr. Lindsay Guthrie was assigned 125,000 class B units for $30,000.

    d.  On or about April 1, 2010, Richard Alcock received 31,416 class B units for $1.

    e.  On or about March 24, 2010, Stefan Eriksson received 54,000 class B units for $1.

    f.  On or about February 3, 2010, Luis Diego Osbourne received 500,000 class B units for $50,000.

    g.  On or about March 10, 2010, Bjorn Engblom received 50,000 class B units for $15,000 of CSD.

132. The acts described in Paragraphs 111 through 131 violate the operating agreement.

133. The acts described in Paragraphs 111 through 131 violate the Illinois Securities Acts.

134. The acts described in Paragraphs 111 through 131 violate the Federal Securities law.

## XI

### COUNT I

#### PETITION FOR APPOINTMENT OF RECEIVER

135. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

136. Plaintiffs hereby request an order appointing a receiver to administer this case by marshalling assets and records, seizing the assets, locating and communicating with Share Class A, B or C members of CSD, performing a forensic accounting to determine the amounts due to each share class member, seeking recovery of assets from Ken Dachman and all Defendants, processing claims, and conducting all business necessary.

**WHEREFORE** Plaintiffs request a receiver be appointed for CSD.

## COUNT II

## CONVERSION

137. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

138. Brian Friedopfer, Gail Gumbiner, Joe Janas, Scott Wolf and Stone Lion Management Inc., individually and as the representatives for their investors, have the sole contractual and unconditional right to the immediate possession of investor's monies for and on behalf of their investors.

139. Ken Dachman assumed and exercised dominion and control over the assets of CSD in an unlawful and unauthorized manner to the exclusion of and inconsistent with the investors' rights.

140. Ken Dachman refused the investors demand for return of the monies.

**WHEREFORE**, Plaintiffs demand judgment against Ken Dachman Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and CSD and in favor of plaintiffs for the amount of damages in excess of $2,000,000 as a result of Ken Dachman's conversion of its investor's monies, books, records, documents, including the costs of the action, reasonable attorneys' fees, accountants' and experts' fees, costs and expenses, and for such other and further relief as the Court deems just and proper, including but not limited to punitive damages.

## COUNT III: BREACH OF FIDUCIARY DUTY

141. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

142. Ken Dachman owed plaintiffs fiduciary obligations as manager of CSD. By reason of his fiduciary relationships to investors, Ken Dachman owed plaintiffs the highest obligation of good faith, fair dealing, loyalty and due care.

143. Ken Dachman violated and breached their fiduciary duties of care, loyalty, and good faith when he diverted assets to himself and his family, refused to pay on reimbursements to physicians for sleep studies, paid his wife an exorbitant salary for work she could not and did not perform, used investor monies for travel to Europe and Alaska, bought rare books, used $200,000 for a down payment on a house in Lake Forest, IL, invested over $4000,000 in his son-in-law's tattoo parlor, and as otherwise stated above converted, wasted and dissipated investor monies.

144. Ken Dachman had actual or constructive knowledge that he, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and certain Jane and John Does have:

    a. Converted the books, records, documents, and assets of plaintiffs Scott Wolf, Stone Lion Management, Gail Gumbiner, Brian Friedopfer, and other investors for their personal use.

    b. Created forged, altered, and distributed inaccurate records to deceive and mislead the Plaintiff's and their investors.

    c. Paid Lynn Dachman over six thousand dollars per month with investor monies for performing little or no work.

    d. Transferred, diverted, dissipated plaintiff's monies to Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and other family members for their personal use.

145. The misconduct and breaches of fiduciary duty of Ken Dachman as detailed in paragraphs 1 through 134 was not a product of a valid exercise of business judgment and were a fraud on the plaintiff's.

146. As a direct and proximate result of Ken Dachman and Lynn Dachman's failure to perform their fiduciary obligations, Plaintiffs have sustained significant actual damages.

WHEREFORE, Plaintiffs demand judgment as follows:

   a.    Against Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and certain John and Jane Does and in favor of plaintiffs. for the amount of damages in excess of $2,000,000 sustained by Plaintiffs as a result of Ken Dachman for Breach of Fiduciary Duty;

   b.    Appoint a receiver to oversee the assets of Ken Dachman, CSD, and all Defendants to protect the assets, including all investors' assets;

   c.    Order that all assets, books, records, and documents be frozen and tendered to a receiver appointed by this court pursuant to Section 12.56 of the Illinois Business Corporation Act, 805 ILCS 5/12.56;

   d.    Award to plaintiffs the costs of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

   e.    Such other and further relief as the Court deems just and proper, including but not limited to punitive damages.

### COUNT IV: BREACH OF CONTRACT:

147. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

148. Plaintiff Scott Wolf and Stone Lion Management performed all duties required under the referral agreement with Ken Dachman.

149. Defendants Ken Dachman and certain John and Jane Does by converting the assets of Scott Wolf's investors have breached the referral agreement.

150. Defendants Ken Dachman, Lynn Dachman and certain John and Jane Does by converting the assets of Scott Wolf's customers and transferring those monies and assets to Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi, have breached the referral Agreement.

151. Plaintiffs have been damaged in an amount and excess of $2,000,000,000.

WHEREFORE, Plaintiffs Scott Wolf and Stone Lion Management Inc. demand judgment as follows:

a. Against Ken Dachman and all defendants in favor of Scott Wolf and Stone Lion Management Inc. for the amount of damages in excess of $2,000,000 sustained by Plaintiffs as a result of Ken Dachman's, Breach of Contract;

b. Appoint a receiver to oversee the assets of Ken Dachman and CSD and to protect the assets, including all investors;

c. Order that all assets, books, records, and documents of all defendants be frozen and tendered to a receiver appointed by this court pursuant to Section 12.56 of the Illinois Business Corporation Act, 805 ILCS 5/12.56;

d. Award to Scott Wolf and Stone Lion Management Inc. the costs of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

30

**e.** Such other and further relief as the Court deems just and proper, including but not limited to punitive damages;

## COUNT V

## ACCOUNTING

152. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

153. The books, records, and documents of Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi, Windy City Ink, and CSD contain the required and necessary financial information to determine the extent of the fraud and make distributions to plaintiffs.

**WHEREFORE**, the Plaintiffs request this court order an accounting of all books, records, documents, and assets of Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Windy City Ink, Gina Parisi and CSD.

## COUNT VI

## Violations of Section 17 (a)(1) of the Securities Act [15 U.S.C § 77q(a)(1)]

154. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

155. Ken Dachman, CSD, and certain John and Jane Does by use of the means and instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly employed devices, schemes or artifices to defraud investors.

156. Ken Dachman and certain John and Jane Does knowingly or recklessly engaged in the fraudulent conduct described above.

157. By engaging in the conduct described above, Ken Dachman and certain John and Jane Does has violated, and unless restrained and enjoined, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

**WHEREFORE**, the Plaintiffs request this court order an accounting of all books, records, documents, and assets of Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and CSD; judgment in favor of the plaintiffs against all defendants in excess of two million dollars and other just relief.

## COUNT VII

### Violations of Section 17 (a)(2) AND 17(a)(3) of the Securities Act

### [15 U.S.C §§ 77q(a)(2 and ) 77q(a)(3)]

158. Plaintiffs repeat and reallege the allegations set forth in paragraphs1 through 13r as if fully set forth herein.

159. Ken Dachman and certain Jane and John Does by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly obtained money or property by means of untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchases of securities.

160. By engaging in the conduct described about, Ken Dachman and certain Jane and John has violated, and unless restrained and enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [ 15 U.S.C. §§ 17q(a)(2) and 77q(a)(3)].

**WHEREFORE**, Plaintiffs demand judgment against Ken Dachman Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and CSD, and in favor of plaintiffs for the amount of damages in excess of $2,000,000 as a result of Ken Dachman and Lynn Dachman's breach of federal securities laws, conversion of investor's monies, books, records, documents including the costs of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and for such other and further relief as the Court deems just and proper, including but not limited to punitive damages.

## COUNT VIII

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)]

### And Rule 10b-5 Thereunder [17 C.F.R. §240.10b-5]

161. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

162. Ken Dachman and certain Jane and John Does by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly: (a) used or employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon other persons, including current and prospective investors.

163. Ken Dachman certain Jane and John Does knowingly or recklessly engaged in the fraudulent conduct described above.

164. By engaging in the conduct described above, Ken Dachman and other defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [ 17 C.F.R. § 240.10b-5].

**WHEREFORE**, Plaintiffs demand judgment against Ken Dachman Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and CSD, and in favor of plaintiffs for the amount of damages in excess of $2,000,000 as a result of Ken Dachman's conversion of its investor's monies, books, records, documents including the costs of the action, reasonable attorneys' fees, accountants' and experts' fees, costs and expenses, and for such other and further relief as the Court deems just and proper, including but not limited to punitive damages.

## COUNT IX

### Equitable Claims against the Defendants for Disgorgement

165. Plaintiffs repeat and reallege the allegations set forth in paragraphs1 through 134 as if fully set forth herein.

166. Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and certain Jane and John Does directly or indirectly received funds or benefited from the use of such funds, which are the proceeds, or are traceable to the proceeds of the unlawful activity alleged above.

167. The monies that Ken Dachman received from CSD investors and distributed to Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi constitute ill-gotten gains from Dachman's fraudulent conduct.

168. Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi do not have legitimate claims to the ill-gotten funds they received from CSD

34

or to any assets that they acquired with those ill-gotten funds and were aware of Ken Dachmans' schemes to defraud and his prior bankruptcies.

169. Between June 2008 and present CSD has diverted at least $2,000,000 (two million dollars) in investor funds to Ken Dachman and his family.

**WHEREFORE,** Plaintiffs demand judgment against Ken Dachman Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and CSD, and in favor of plaintiffs for the amount of damages in excess of $2,000,000 as a result of Ken Dachman's conversion of its investor's monies, books, records, documents including the costs of the action, reasonable attorneys' fees, accountants' and experts' fees, costs and expenses, and for such other and further relief as the Court deems just and proper, including but not limited to punitive damages.

## COUNT X

### Illinois Securities Fraud

170. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

171. Pursuant to Section (815 ILCS 5/12) it is unlawful to offer to:

    a.  To offer or sell any security except in accordance with the provisions of the Act.

    b.  To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

    c.  To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

35

d. To sign or circulate any statement, prospectus, or other paper or document required by any provision of this Act or pertaining to any security knowing or having reasonable grounds to know any material representation therein contained to be false or untrue.

e. To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly;

f. Dachman violated 815/ILCS 5/12 when he offered to sell and sold shares in CSD, failed to disclose his and his wife's seven prior bankruptcies and dozens of pending suits which were a fraud or deceit upon the investors and purchasers of the shares of CSD.

g. By engaging in the conduct described above Ken Dachman violated the Illinois Securities Act.

**WHEREFORE**, Plaintiffs demand judgment against Ken Dachman Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and CSD, and in favor of plaintiffs for the amount of damages in excess of $2,000,000 as a result of Ken Dachman's conversion of its investor's monies, books, records, documents including the costs of the action, reasonable attorneys' fees, accountants' and experts' fees, costs and expenses, and for such other and further relief as the Court deems just and proper, including but not limited to punitive damages.

## COUNT XI

## RICO

172. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 134 as if fully set forth herein.

173. At all relevant times Ken Dachman and certain Jane and John Does, and certain investment vehicles constituted an "association-in-fact" enterprise as that term is defined in 18 USC § 1961 (4).

174. In furtherance of the enterprise and as detailed in this complaint, Ken Dachman and others working in concert with him, including Lynn Dachman, used or caused the use of the U.S. mail and wires on a number of occasions to defraud plaintiffs, in violation of 18 U.S.C 1341 and 1343.

175. The purpose of the association in fact was to keep Ken Dachman and CSD capitalized by providing alternate, albeit illegitimate, sources of funds to CSD and that CSD could not otherwise obtain through legitimate credit markets.

176. For example and as explained above, the association in fact sold to unsuspecting investors supposedly secure investments (i.e. Class B and C shares of CSD) that, unknown to these investors, were used by Ken Dachman for personal and family matters, such as salaries in excess of $300,000 to Ken Dachman, $6,000 per month to his wife Lynn, investments or loans to his children, the purchase of rare books and European and Alaskan cruises. As a result, the value, security, and risk of these investments actually depended on new monies continually being received, a fact never disclosed to investors.

177. In an entirely different scheme, Advanced Sleep Diagnostics ("ASD"), also discussed above, the association in fact also sold as investments a complicated security debt investment that ultimately relied on undisclosed principals, to note: Key Partners. As a result, the value, security, and risk of these investments too depended on the financial status of CSD, again a fact never disclosed to the investors.

178. To help effectuate his schemes to provide himself, family and friends with illegitimate sources of funds that Ken Dachman and CSD could not otherwise obtain through legitimate means Ken Dachman organized, controlled, and was at the center of the association in fact.

179. CSD provided the shares or units for the investment vehicles. Ken Dachman also set up a referral agreement with third parties including Stone Lion Management and Emirates Asset Management Inc. Their job was to find potential investors and then convince them, without access to or knowledge of the fraudulent history of Ken Dachman, to purchase the fraudulent investments, including those that were ultimately but secretly going to be for personal matters such as purchasing cars, a house, trips to Europe and Alaska and funding his children's lifestyles to obtain added financing.

180. As detailed above, there were at least three distinct schemes involved here: (i) CSD and (ii) ASD scheme and (iii) Key Partners. These schemes involved many victims, took place over a number of years, and were furthered and supported by numerous instances of mail and wire fraud.

181. For example, as shown above, the CSD scheme was accomplished in part by use of the materially misleading operating agreement, executive summary, and financial statements, which were sent in through the mails. Mr. Janas, Ms. Gumbiner, and all investors received those documents through the mail.

182. Furthermore, also shown above, Ken Dachman had numerous meetings and telephone conversations with Mr. Janas and Ms. Gumbiner in which Ken Dachman either deliberately misrepresented the nature and risk of the investments or omitted material information about their nature and risk and their connection to CSD including, but not

limited to the failure to disclose Ken Dachman's history of bankruptcies and past and pending law suits against Ken Dachman.

183. These representations and omissions were communicated via the U.S. mail and wires, this constituting mail and wire fraud as defined in 18 U.S.C. 1961 (B).

184. Because Ken Dachman's activities took place over several years and victimized numerous people, including plaintiffs, and because Ken Dachman has committed at least two acts of racketeering activity since the effective date of RICO, all within the last three years, Ken Dachman has engaged in a pattern of racketeering as defined in 18 U.S.C. 1961 (5).

185. Ken Dachman was associated with the aforementioned association-in-fact enterprise and participated in the affairs of the enterprise through the "pattern of racketeering activity" as defined in 18 U.S.C. 1961(5), thus violating 18 U.S.C. 1962(c).

186. These misrepresentations and nondisclosures of material facts took place in connection with information transmitted though the United States mails and wires in order to defraud the investors in violation of 18 U.S.C. §§ 1341 and 1343.

187. But for the concealment of the actual facts, the investors would not have purchased shares or units in CSD.

188. By reason of misrepresentations the investors have suffered economic loss in that their investments became worthless.

189. The investments became worthless because of the matters not disclosed to the investors by, or because of the affirmative representations made to them by Ken Dachman:

   a. The CSD investment lost all of its value precisely because of the facts, not disclosed to the Investors, thereby making it all subject to Ken Dachman's use of

those investments as collateral and/or payment for his own debts, cars, homes and vacations.

    b. The ASD shares or units lost substantially all of its value because the monies were used for personal items for and on behalf of Ken Dachman.

190. All of the investments lost value because they were sponsored and controlled by Ken Dachman and Lynn Dachman, whose backgrounds were concealed and financial status was falsely represented by Ken Dachman.

**WHEREFORE,** plaintiffs demand judgment against Ken Dachman Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and CSD and in favor of the plaintiffs for the amount of damages in excess of $2,000,000 sustained by the plaintiffs as a result of Ken Dachman's racketeering schemes, breaches of fiduciary duties, abuse of control, gross mismanagement, and waste of corporate assets, and

    A. Awarding to plaintiffs the costs of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

    B. Granting such other and further relief as the Court deems just and proper including but not limited to punitive damages.

**COUNT XII**

**WASTE OF CORPORATE ASSETS**

191. Plaintiffs shareholders by reference and reallege each and every allegation contained in paragraph 1 through 134 as if fully set forth herein.

192. As a result of his improper actions and by failing to properly consider the interests of the shareholders, by failing to conduct the business of CSD in a manner so authorized by the operating agreement, Ken Dachman caused CSD to waste valuable corporate assets

by paying personal non business expenses from CSD's assets, paying himself excessive compensation,

193. As a result of the waste of corporate assets, Ken Dachman Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi are liable to the plaintiff shareholders.

**WHEREFORE,** Plaintiffs respectfully request the following relief:

a. Against Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and certain John and Jane Does and in favor of plaintiffs. for the amount of damages in excess of $2,000,000 sustained by Plaintiffs as a result of Ken Dachman for waste of corporate assets;

b. Appoint a receiver to oversee the assets of Ken Dachman and CSD to protect the assets of investors;

c. Order that all assets, books, records, and documents be frozen and tendered to a receiver appointed by this court pursuant to Section 12.56 of the Illinois Business Corporation Act, 805 ILCS 5/12.56;

d. Award to plaintiffs the costs of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses;

e. Order an accounting;

f. Order that Ken Dachman have no further contact individually or through his agents with CSD and that he preserve all books and records of CSD;

g. Defendants to disgorge the ill-gotten gains they received as a result of the violations alleged in this Complaint, including without limitation all investor

funds transferred to them or used, directly or indirectly, for their benefit, plus prejudgment interest;

h. Grant appropriate emergency relief to prevent further secretion or dissipation of investor assets; and

i. Such other and further relief as the Court deems just and proper, including but not limited to punitive damages.

## COUNT XIII

## INJUNCTIVE RELIEF, INCLUDING *EX PARTE* TEMPORARY RESTRAINING ORDER AND APPOINTMENT OF RECEIVER

194. Plaintiffs Brian Friedopfer, Gail Gumbiner, Joe Janas, Scott Wolf and Stone Lion Management Inc., repeat and reallege paragraphs 1- 134, as and for paragraph 1 of this Count 1.

195. The entry of temporary restraining order, preliminary injunctive relief and a permanent injunction is necessary to preserve the *status quo*.

196. If Ken Dachman is not removed from control of CSD and a interim Director appointed, there is a significant probability that CSD will be placed into bankruptcy by Ken Dachman to attempt to cover up his frauds or by a third party in that Ken Dachman currently is a signatory for all CSD expenditures and there exists the opportunity and the prior history for Ken Dachman to diminish or transfer funds of CSD to his family and co-defendants.

197. On balance, the equities favor the plaintiffs.

198. On the merits, the plaintiffs have a strong likelihood of success.

199. The plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs Brian Friedopfer, Gail Gumbiner, Joe Janas, Scott Wolf and Stone Lion Management Inc. pursuant to Sections 11-101 and 11-1-02 of the Illinois Code of Civil Procedure, seek the entry of temporary and preliminary injunctive relief against Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, and Gina Parisi whether acting alone or in a concert with any other person as and the following:

      a.  To appoint------------------------ as custodian or receiver;

      b.  To prohibit Defendant Ken Dachman from entering into any agreement that sells or purports to sell, or grants or purports to grant the stock of CSD an Illinois LLC;

      c.  To prohibit Defendant Ken Dachman from acting, in any capacity, by or on behalf of CSD, an Illinois LLC;

      d.  To prohibit Defendant Ken Dachman from transferring, removing, altering, tampering with or destroying any cash, monies, property (whether real, intangible, or electronic), books or records, including computer records, of CSD., an Illinois corporation, or of its investors or patients;

      e.  To prohibit Ken Dachman or anyone acting on his behalf from entering the premises of CSD;

      f.  To freeze all assets of Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and or CSD at financial institution; and

      g.  To grant such further relief as the court deems appropriate.

## COUNT XIV

## CONSTRUCTIVE TRUST

200. Plaintiffs shareholders by reference and reallege each and every allegation contained in paragraph 1 through 134 as if fully set forth herein.

201. Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi knew that Ken Dachman and/or Ken and Lynn Dachman have filed numerous bankruptcies to defeat creditors and have been repeatedly sued for fraud.

202. Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi knew that they were unjustly enriched when they received monies from Ken Dachman for:

    a.  Purchasing the Windy City Ink tattoo parlor for Gary Parisi and Jillian Dachman

    b.  Paying mortgages and/or rents on their personal homes

    c.  $30,000 family vacations to Europe and Alaska

203. That Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi accepted monies and other benefits when they knew that the monies were intended to be used for patients' sleep studies and the payments to employees, physicians and others.

204. That equity will raise a constructive trust to the extent that the Defendants have been and presently are being unjustly enriched.

205. That it would be inequitable for the Defendants to retain any and all properties and personal items including but not limited to houses, cars, tattoo parlor, rare books which are rightfully the possession of the investors.

206. That Lynn Dachman and Gary Parisi as members of Key Partners have actual and constructive knowledge of Ken Dachman's frauds, including the above described breaches of fiduciary duty.

**WHEREFORE** Plaintiff's requests this Court order:

    a.  A constructive trust of all assets of the Defendants;

b. An accounting of the Defendants' assets;

c. To appoint------------------------ as custodian or receiver;

d. To prohibit Defendant Ken Dachman from entering into any agreement that sells or purports to sell, or grants or purports to grant the stock of CSD an Illinois LLC.

e. To prohibit Defendant Ken Dachman from acting, in any capacity, by or on behalf of CSD, an Illinois LLC;

f. To prohibit Defendants from transferring, removing, altering, tampering with or destroying any cash, monies, property (whether real, intangible, or electronic), books or records, including computer records, of CSD., an Illinois corporation, or of its investors or patients;

g. To prohibit Defendants or anyone acting on his behalf from entering the premises of CSD;

h. To freeze all assets of Defendants; and

i. To grant such further relief as the court deems appropriate.

## COUNT XV

## CIVIL CONSPIRACY

207. Plaintiffs shareholders by reference and reallege each and every allegation contained in paragraph 1 through 134 as if fully set forth herein.

208. Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi and others have knowingly participated with Ken Dachman in dissipating and diverting the assets of Central Sleep Diagnostics, including the breach of fiduciary duties to the investors, patients and employees of Central Sleep Diagnostics.

209. Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi, Gina Parisi's actions were tortuous and/or unlawful in that they knew that Ken Dachman was engaged in the whole sale theft, fraud and conversion of investor's monies.

210. Lynn Dachman has personal knowledge of both Ken Dachman's and her numerous prior bankruptcies and the pattern and practice of fraud that Ken Dachman and she have previously participated.

211. Lynn Dachman knew that she was neither competent nor qualified to act as a bookkeeper, much less should have acted as a bookkeeper for Central Sleep Diagnostics except to further continue her and Ken Dachman's history of fraud, nor was she entitled to $6,500 a month in compensation.

212. Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi engaged in a concerted action as a crime family knowing that their tortuous acts, including breach of fiduciary duty, conversion and fraud were conducted with Ken Dachman and/or Key Partners and Central Sleep Diagnostics pursuant to a common design, to wit, Ken Dachman would solicit investors' monies and then use those investors' monies to purchase a tattoo parlor, take the family on extravagant vacations with investors' monies, and pay family rent, mortgage and other items instead of compensating physicians who performed the sleep studies and various employees.

213. Ken Dachman, Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi and Gina Parisi participated in the tortuous acts to further the conversion of investor assets and breaches of fiduciary duties.

**WHEREFORE** Plaintiff's requests this Court order:

    a.  A constructive trust of all assets of the Defendants;

46

b. An accounting of the Defendant's assets;

c. To appoint------------------------ as custodian or receiver;

d. To prohibit Defendant Ken Dachman from entering into any agreement that sells or purports to sell, or grants or purports to grant the stock of CSD an Illinois LLC;

e. To prohibit Defendant Ken Dachman from acting, in any capacity, by or on behalf of CSD, an Illinois LLC;

f. To prohibit Defendants from transferring, removing, altering, tampering with or destroying any cash, monies, property (whether real, intangible, or electronic), books or records, including computer records, of CSD, an Illinois corporation, or of its investors or patients;

g. To prohibit Defendants or anyone acting on his behalf from entering the premises of CSD;

h. To freeze all assets of Defendants; and

i. To grant such further relief as the court deems appropriate.

## COUNT XVI

### ILLINOIS UNIFORM FRAUDULENT TRANSFER

214. Plaintiffs shareholders by reference and reallege each and every allegation contained in paragraph 1 through 134 as if fully set forth herein.

215. At all relevant times, Ken Dachman, Lynn Dachman and Gary Parisi, a member of Key Partners knew that the investors' monies that were intended for Central Sleep Diagnostics were directed to Gary Parisi, Windy City Ink, and other Defendants to defraud the investors.

47

216. Neither Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi nor Gina Parisi provided any consideration for the monies, gifts, houses, cars, travel, or rental payments.

217. Lynn Dachman, Jillian Dachman, David Dachman, Gary Parisi or Gina Parisi knew of the federal bankruptcies of Ken and Lynn Dachman and the numerous lawsuits filed against Ken Dachman and continued to accept and receive noise they knew or should have known were converted from third parties.

**WHEREFORE** Plaintiff's requests this Court order:

    a.  A constructive trust of all assets of the Defendants;

    b.  An accounting of the Defendant's assets;

    c.  To appoint----------------------- as custodian or receiver;

    d.  To prohibit Defendant Ken Dachman from entering into any agreement that sells or purports to sell, or grants or purports to grant the stock of CSD an Illinois LLC.

    e.  To prohibit Defendant Ken Dachman from acting, in any capacity, by or on behalf of CSD, an Illinois LLC;

    f.  To prohibit Defendants from transferring, removing, altering, tampering with or destroying any cash, monies, property (whether real, intangible, or electronic), books or records, including computer records, of CSD., an Illinois corporation, or of its investors or patients;

    g.  To prohibit Defendants or anyone acting on his behalf from entering the premises of CSD;

    h.  To freeze all assets of Defendants; and

    i.  To grant such further relief as the court deems appropriate.

VERIFICATION

Under the penalties as provided by law pursuant to Section 1-109 of the Code of Civil
Procedure, the undersigned certifies that the statements set forth in this instrument are
true and correct, except as to such matters therein stated to be on information and belief
and such matters, the undersigned certifies that he believe the same to be true

Brian Friedopfer

Joe Janas

Respectfully submitted,

By: _____

James B. Koch

James B. Koch
GARDINER KOCH & WEISBERG & WRONA
Attorney No. 29637
53 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604