UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kevin Duff, as Receiver for <br> Central Sleep Diagnostics, et al. <br> <br> Plaintiffs, <br> <br> v. <br> <br> Ken Dachman, Lynn Dachman, <br> Jillian Dachman, David Dachman, <br> Gary Parisi, and Gina Parisi <br> <br> Defendants, | Case No. 10-cv-6162 <br> Judge Rebecca R. Pallmeyer |

## RECEIVER'S FIRST STATUS REPORT

Kevin B. Duff, as the Receiver ("Receiver") for the assets of Central Sleep Diagnostics ("CSD"), by and through his attorneys Gardiner Koch Weisberg & Wrona ("GKWW"), and pursuant to the powers vested in him by the Order of this Court, now respectfully submits this First Status Report to apprise the Court of the status of the Receivership, and states as follows:

### A. SUMMARY OF THE OPERATIONS OF THE RECEIVER

Kevin B. Duff was appointed as substitute Receiver on April 21, 2011. (Docket No. 151.) GKWW was previously retained as counsel to the Receiver. The Receiver retained RDDAP as co-counsel on April 21, 2011 and on May 23, 2011 the Court entered an order approving the rates to be charged by Receiver's co-counsel RDDAP. (Docket No. 169.)

The Receiver has used reasonable efforts in connection with the analysis and disposition of various property interests of the Receivership Defendants, including monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims,

1

rights and other as taken assets, together with all profits, interest, or other income attributable thereto, of whatever kind, which the Receivership Defendants owned, possessed, had a beneficial interest in, or controlled directly or indirectly. In furtherance of such, the Receiver, in conjunction with his legal counsel, GKWW and Rachlis Durham Duff Adler & Peel, LLC ("RDDAP"), and/or his predecessor, has taken, *inter alia,* the following actions:

1. Immediately took steps to ascertain the location of Receivership property and records. Property and records were located in two principal locations: CSD offices and Dachman's residence. All tangible items from CSD offices were either seized or sold. Records that were seized are in the possession of GKWW.

2. Determined the identity of all investors and their investments. The Receiver also received records from the Defendants, federal authorities, and some investors.

3. Certain computers and office equipment were sold for $6,000.

4. The Receiver established a Receivership account ("the Settlement Fund") and arranged for all Receivership funds that were being held by the previous Receiver, James Sullivan, to be transferred to the Settlement Fund.

5. The Receiver sold certain books through a consignment bookseller, for which the Receiver received $3,600. The Receiver is in possession of additional books that Dachman insured for $250,000 and described as "rare." Those books purport to be signed by the authors. However, two independent experts have valued the collection from $2,000 to $10,000.

6. Upon leave of the Court, the Receiver retained an Estate Sale company to conduct a sale at Defendants' rented Glencoe home. (Docket No. 200.) The Estate Sale resulted in $19,389.50 to the Receivership.

7. Filed an Ancillary Action against David and Dawn Wheldon to seek the return of $329,000 which was the amount the Dachmans paid for the Lake Forest home. (Docket No. 131.) The matter was referred to Magistrate Judge Schienker. The Wheldons produced sworn financial statements which confirmed that they were unable to pay any monies. The Receiver and Counsel thoroughly reviewed the financial disclosures and advised the Magistrate Judge that the case would be dismissed. This Court granted the parties' Joint Motion to Dismiss the Action (Docket No. 254.)

8. The Receiver filed an Ancillary Action against Timothy Murphy, the Dachman family attorney. (Docket No. 263.) The Ancillary Action seeks $21,500. A Motion for Default Judgment was filed when Murphy failed to answer the complaint. (Docket No. 257.) Murphy answered on November 29, 2011. There is a pending agreed motion for a settlement conference. (Docket No. 268.)

9. A Motion is pending before the Court to recover approximately $13,500 in Dachman's granddaughter's daytrading account. (Docket No. 228.)

10. The Receiver is currently negotiating with the U.S. Attorney to sell the 2008 Range Rover estimated to be worth $20,000.

11. The Receiver has initiated wage garnishment proceedings, however, the Dachmans, through their attorney, Mr. Murphy, have deliberately delayed or refused to produce documents or testimony. A Motion is pending in that regard.

12. On November 3, 2011 this Court granted Receiver's Motion for Approval of the Rates to be Charged by Receiver's Accountant (Docket No. 250) and to Appoint a Tax Administrator to perform the necessary tax related work with regards to the Receivership and Settlement Fund (Docket No. 249).

## B. RECEIVER'S FUND ACCOUNTING

The Receiver's Standardized Fund Accounting Report ("SFAR") through November 30, 2011 is attached hereto as Exhibit A. The SFAR sets forth the funds received and disbursed from the Receivership estate since the beginning of the Receivership. As reported in the SFAR, the amount of cash on hand is $29,182.68; the amount of accrued administrative expenses, consisting of business asset expenses and personal asset expenses, is $200. The information reflected in the SFAR is based on records and information currently available to the Receiver. The Receiver and his advisors are continuing with their evaluation and analysis.

3

## C. RECEIVER'S SCHEDULE OF RECEIPTS AND DISBURSEMENTS

The Receiver's Schedule of Receipts and Disbursements ("Schedule") since the beginning of the Receivership is attached hereto as Exhibit B. The Schedule sets forth the following receipts and disbursements:

1. The amounts and sources of funds transferred to the Receiver's accounts from liquidation of the business and personal assets of the Receivership Defendants, totaling $28,989.50;

2. Income from other sources, totaling $393.18;

3. Disbursements made from the Receiver's accounts for receivership operations, consisting of business and personal asset expenses, totaling $200.

The Schedule does not include certain cash assets and unliquidated investments originally held or made by the Receivership Defendants which have not yet been transferred to the Receiver's accounts.

## D. CLAIMS AND CREDITORS AGAINST THE RECEIVERSHIP ESTATE

The Receiver and his counsel have identified the following claims and creditors:

1. The Receiver and his counsel have identified 76 investors who invested over $3,000,000;

2. The prior landlord claims approximately $250,000 in rent and build-outs;

3. Somnographics seeks $100,000 for certain medical equipment for sleep testing;

4. There are over two dozen former employees of Central Sleep Diagnostic, LLC seeking wages due, including some who have filed wage claim demands with the Illinois Department of Labor;

5. There is a complaint by Dachman's prior attorney for $30,000;

6. There are several media/advertising companies that collectively seek over $30,000;

7. James Sullivan, the previous Receiver, is owed $6,000;

4

8. Titus, the interim director appointed by Judge Pallmeyer, is owed $6,500;

9. The law firm of GKWW has performed legal work from August 2010 to present for an amount in excess of $70,000;[1]

10. The Receiver, Kevin Duff, and the law firm of RDDAP are owed $26,036.44 through September, 2011;

11. The Receiver's Tax Administrator will be owed $750 for its tax administration duties; and

12. The Receiver's Accountant anticipates fees to be between $2,400-5,000 for tax preparation services.

### E. DISTRIBUTION

The Receiver has liquidated most available assets. Ultimately, the Receiver expects the total recovery of assets to pale in comparison to any potential recovery by Dachman's victims, investors and/or creditors. In fact, it is likely that Dachman's victims, investors and/or creditors will receive very little or no money out of the Central Sleep Diagnostics receivership. However, to the extent feasible, the Receiver intends to create a just and fair distribution plan for the creditors of the Receivership estate. Upon formulation of this distribution plan, the Receiver will file a motion with the Court, giving appropriate notice of the Receiver's intent to receive Court approval for a distribution plan.

### F. CONCLUSION

The Receiver recommends the continuation of the Receivership for the following reasons:

---

[1] GKWW intends to reduce its bill substantially. The Dachmans' defense strategy was to harass counsel and delay the proceedings, including by filing frivolous motions, refusing to produce discovery, etc. One of the Dachmans attorneys, Andy Norman, hired a private investigator to investigate Receiver's counsel, James Koch and took false statements from investors.

1. The continued investigation and analysis of assets and potentially recoverable assets for which the Receiver is still evaluating the value, potential value and/or ownership interests;

2. The continued efforts of the Receiver to liquidate various assets of the Receivership;

3. The continued investigation and analysis of the potential claims against the Receivership; and

4. The continued analysis and formulation of a just and fair distribution plan of the Settlement Fund.

Dated: December 1, 2011

                                        Respectfully submitted,

                                        Kevin B. Duff, Receiver

                                        By:     s/ James B. Koch

James B. Koch
Gardiner, Koch, Weisberg & Wrona
53 West Jackson Blvd. Suite 950
Chicago, IL 60604
T (312) 362-0000
F (312) 362-0440

*Counsel for Plaintiff*